JOHN DELUDE *vs*. ST. PAUL CITY RY. CO.

Argued Oct. 5, 1893.   Affirmed Oct. 18, 1893.

No. 8368.

| 55 | 63 |
|----|----|
| 67 | 67 |

| 55 | 63 |
|----|-----|
| 81 | 184 |

**Notice or knowledge a question for the jury.**

Where an employe was injured while coupling cars, by reason of alleged defects in the coupling apparatus, *held* that, under the evidence, the question whether he knew of such defects, or was reasonably chargeable with notice thereof, was a question for the jury.

**Employe may assume the machinery to be in good repair.**

In the absence of such notice, the employe has a right to assume that the master had used due diligence to keep dangerous machinery or appliances in good order and in a safe condition.

**Questions for the jury.**

Certain other questions of fact, involving the alleged negligence of the parties, *held* properly submitted to the jury.

**Reasonable care in an emergency.**

Where a party who handles dangerous machinery is called upon to act suddenly or in an emergency, that fact may become material, and be considered in connection with others, in determining the question of notice and reasonable care.

**Joint negligence of master and a fellow servant.**

Where the negligence of the master combines with that of a fellow servant, so as to contribute to the injury of another servant, the master is liable.

**Exception too general.**

Where, of several requests to charge, some are given, and others satisfactorily covered by the general charge, and others are not given, a

general exception, without calling the attention of the court to the particular omission complained of, is unavailing on appeal.

**Damages not excessive.**

Damages *held* not so large as to warrant the interference of this court.

Appeal by defendant, the St. Paul City Railway Company, from an order of the District Court of Ramsey County, *Chas. D. Kerr, J.*, made June 29, 1893, denying its motion for a new trial.

On October 23, 1891, the plaintiff, John Delude, was in the service of the defendant as conductor upon its Selby Avenue Cable line in St. Paul. At six o'clock in the morning of that day he took a grip-car and trailer, from the power house at Dale Street, and went east to the end of the line at Broadway and then back to the west end of the line, just beyond Milton Street. This suburban cross street is in low ground so that gravity will move the cars to it from either direction. Here the cars are switched over onto the southern track and coupled for the return trip east to Broadway again. While plaintiff was coupling the trailer to the gripcar on the south track at Milton Street the draw bar of the gripcar failed to strike the draw head of the trailer, but slipped by and allowed the cars to come together. Plaintiff's left leg was caught between the opposite stay-chain coupling hooks and was seriously injured. He made his report of the casualty, as follows;

"After setting brake on coach at the switch I got between cars to couple. Drawbar being turned out I tried to pull it back, in so doing my leg (left) stood against the hook when the grip came crashing into the coach, the hook from the grip smashing my leg.

"JOHN DELUDE."

Subsequently on November 25, 1891, he made a verified claim for damages and presented it to the company. In it he described the occurrence, as follows;

"The coach was standing, and in my position as conductor, it was my duty to make the coupling of the same to the grip car. I had set the coach brake, and stood in front of the coach so as to make the coupling when the grip car and coach came together. When the grip car came back and struck the coach it was with such force that the drawbars were forced to one side owing to the side springs or guides for holding the draft irons in position, being broken. The

cars were forced closer together than at any time previous, which caused the stay-chain coupling hooks to catch my left leg between them, jamming it above the knee."

At the close of the evidence the defendant submitted five several requests to charge. The judge gave the first in terms and embodied the last three substantially in the general charge to the jury. The defendant then stated to the court as follows; "To the refusal of the court to give each instruction asked by the defendant we desire to except." The second request was as follows;

"The plaintiff on entering the employment of the defendant assumed the ordinary risks incident to such employment, including the negligence of a co-employee, and if the jury find that the appliances in and about the train upon which plaintiff was employed were in a reasonably safe condition for the purpose for which they were intended, then your verdict must be for the defendant."

The jury returned a verdict for the plaintiff and assessed his damages at $2,750. The defendant made a case and it was settled, signed and filed. On it and the pleadings, verdict and files, defendant moved for a new trial. Being denied, it appeals. In this court there was no disagreement between counsel as to the law or its application, but the discussion was principally upon the evidence, whether it justified the verdict. Defendant claimed, that, measured by the standard of duty imposed on it by law, the evidence failed to show that it was negligent in the premises.

*McCafferty & Noyes,* for appellant.

*James E. Markham,* for respondent.

VANDERBURGH, J.   This is a personal injury case. The plaintiff, an employe of the defendant, was injured while coupling cars. These cars were operated upon a cable line in the city of St. Paul, and consisted of a grip car and a coach. At the time in question the cars had arrived at Milton street, near the western terminus of the line, to and from which street the grade of the track rises in either direction. At this point the cars are switched upon a parallel track, and the train made up for the return trip, and the usual procedure was followed in this instance. The grip car was uncoupled and switched over to that track, and pulled east beyond the switch, so as to allow the coach to be switched over to the same

track, in order that it might be coupled to the rear or west end of this grip car. When the coach was transferred, it was suffered to run down the grade across Milton street, and up to the proper point, when the brake was set by the conductor, who was the plaintiff in this case, and thereupon the grip car was allowed by the employe in charge to run back to the coach where the conductor stood, ready to couple them when they came together. This was done by inserting a coupling pin in the coupling apparatus, which consisted of a drawbar attached to and projecting beyond the platform of the grip car, and a drawhead in like manner attached to the coach. There also projected from the platforms of each car, opposite to each other, hooks for stay chains. The drawhead and the drawbar operated to keep the cars from coming together further than necessary to couple them, and constituted the only obstacle to prevent the two platforms from striking each other. When they were in order, and in a right line with the cars, and properly united by the coupling pin, there was an open space of eight inches between the extremities of the stay hooks.

The drawhead and drawbar referred to each rested on a broad steel spring, fastened at each end to wooden framework, constituting the edge of the platform, and they were so attached to the cars as to allow a lateral movement on this spring each way of six or seven inches, so as to permit the apparatus to adjust itself to curves in the track.

The evidence also tends to show that on each side of the drawbar of the grip car, and under the platform, there had been constructed two lateral springs for the purpose of holding the drawbar in place in a central position, and which would at the same time allow the necessary lateral movement under pressure. It is obvious that if these springs were in place and operative, and the cars were coupled on a straight track, under the circumstances admitted to have existed in this case, the cars would not be brought nearer together in the act of coupling than above indicated.

On the occasion in question here the plaintiff set the brake in the usual way on the coach, passed through, and took his position between it and the grip car as it approached, for the purpose of making the coupling. His evidence shows that the drawhead of the coach was turned one side, and that he reached over and drew it

towards him to its proper position in the center, and then attempted to make the coupling, but, when the drawhead and the drawbar came together, the effect was to turn them both towards the other side of the track, and the result was to bring the cars together, and plaintiff's leg was caught between the stay hooks, and injured; and hence this action for damages. The plaintiff was required to act promptly, owing to the near approach of the grip car when he arrived at the front end of the coach, and, according to his testimony, he was not aware that the coupling apparatus was out of repair or unsafe.

After the accident, on the same day, he discovered that the lateral springs which were required to hold the drawbar in place were broken or missing. There is also evidence tending to show that a spring upon which the drawhead of the coach rested, called in the testimony an "elliptical spring," was also bent down, which affected its position, and hindered him in making the coupling. There is also evidence sufficient to sustain the finding of the jury that the grip car was out of repair, as above described, on the night before the accident; and that it was the duty of defendant's servants to inspect and repair the same before sending it out on the track again, and which they failed to do; and that the defect complained of was the cause of, or essentially contributed to produce, the accident.

These questions were properly submitted to the jury by the court, upon the evidence. The court correctly charged the jury, in substance, that the plaintiff, in the absence of notice to the contrary, or the existence of facts sufficient to charge him with notice, might assume that the defendant had used reasonable care and diligence to keep these appliances in good order and in a safe condition; and it was a question for the jury, considering the circumstances under which he was required to act in making the coupling, to determine whether he knew of or was negligent in not observing the defects complained of.

And so also as respects the contention of the defendant that the accident resulted from the alleged careless and reckless speed with which the grip car was backed down against the coach. As to the facts, the plaintiff and the "gripman" both testify to the contrary, and that it was handled in the usual way, and with prudence and care. It is true there are some statements and admissions in

the plaintiff's report of the accident to the company, made on the same day, which tend to support the claim of the defendant touching this matter. But they are not conclusive, but, with plaintiff's explanations and testimony on the trial, were properly submitted to the jury. They will be again referred to.

It is also contended by the defendant that the plaintiff was negligent in taking the position he did between the cars, and it is claimed that with reasonable care he might have avoided the danger consistently with his duty in undertaking to couple the cars. This question was contested by the parties upon the trial, and there was considerable evidence on both sides in direct conflict on the subject; so that the question was fairly for the jury, and the court was right in holding that it did not indisputably and conclusively appear that the plaintiff was negligent in the premises. It is unnecessary to make special reference to the evidence.

There is no exception to the charge of the court to the jury, but merely to the refusal of the court to give certain requests asked by the defendant; but, of the five requests made, the first was given as requested, and the others, except perhaps the second, were fairly covered by the general charge; and, in view of the instructions actually given, it is evident that the single general exception taken by the defendant to the court's disposition of these requests was not sufficient to direct the attention of the court to the point in the second request now specially insisted on by the defendant, and which refers "to the risk assumed by the plaintiff of the negligent conduct of a coemploye." We may infer that, if the attention of the court had been called to this point, it would have given the appropriate instruction.

It is assumed by the defendant that the accident was caused by the fact that the grip car was permitted to strike the coach with such violence as to force the cars together. This the gripman in charge and the plaintiff both deny, and the claim is predicated upon the admission of the plaintiff in his statement to the company above referred to, as follows: "When the grip car came back and struck the coach, it was with such force that the drawbars were forced to one side;" but he says in the immediate connection with the foregoing: "Owing to the *side springs* or guides for holding the draft irons in position *being broken*," and "the cars were forced closer to-

gether than at any time previous, which caused the stay chain hooks to catch my leg between them, jamming it above the knee." It will be observed that the plaintiff claims here also that the absence of the "side springs or guides" was the cause of the accident, which the jury, under the instruction of the court, must have found to be true. We doubt, therefore, if, in any view of the case, the omission to give this request was prejudicial, because it is well settled that if the negligence of the master combines with that of a fellow servant, and the two contribute to the injury of another servant, the master is liable. *Franklin* v. *Winona & St. P. R. Co.*, 37 Minn. 409, (34 N. W. Rep. 898.)

The case appears to have been carefully tried, and it was fairly and impartially presented to the jury by the court in its charge. The trial court, which was necessarily more familiar with the merits, was of the opinion that the verdict was not unreasonable in amount, and we do not think it so large as to warrant this court to set it aside as excessive.

Order affirmed.

(Opinion published 56 N. W. Rep. 461.)