VANCE KING v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

June 22, 1899.

Nos. 11,632—(61).

### Personal Injury—Highway Crossing—Negligence—Proximate Cause.

Action to recover for personal injuries sustained by the plaintiff in a collision with defendant's locomotive at a public highway crossing. *Held:*

1. That the verdict, to the effect that the defendant was, and the plaintiff was not, guilty of negligence in the premises, is sustained by the evidence.

2. Where an injury is caused proximately by the concurring negligence of two or more parties, each is liable for the result, and that a request for instructions to the jury which ignored this rule was rightly refused.

Action in the district court for Mower county to recover $2,000 for personal injuries. The case was tried before Whytock, J., and a jury, which rendered a verdict in favor of plaintiff for $1,000; and from a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*H. H. Field* and *Shepherd & Catherwood,* for appellant.

*Lafayette French* and *A. W. Wright,* for respondent.

START, C. J.[1]

At about 11 o'clock of the morning of October 9, 1896, the plaintiff, while in the act of driving his team over a public-highway crossing of the defendant's railway tracks in the village of Blooming Prairie, this state, was struck and injured, his horses killed, and his wagon destroyed by the defendant's locomotive attached to a freight train. He brought this action to recover the damages so sustained. The complaint alleged that the plaintiff's injuries were caused without any negligence on his part, but solely by the negligence of the defendant in running the locomotive over the crossing at a dangerous rate of speed, without giving any signal or warning of its approach. The answer put in issue these allegations of the complaint. There was a verdict for the plaintiff for $1,000, and a motion for a new trial by the defendant, which was denied. Judgment was entered on the verdict, from which the defendant appealed.

The assignments of error raised two general questions, (a) as to the sufficiency of the evidence to support the verdict, and (b) as to the correctness of the action of the trial court in charging the jury, and in refusing to give certain special requests for instructions.

1. The evidence is unquestionably sufficient to support the finding of the jury that the defendant was guilty of negligence in the premises. This is practically conceded by its counsel; but it is vigorously urged that the evidence conclusively established that the plaintiff was guilty of negligence, which was the cause of his injury.

The defendant's main track at the place of the accident runs north and south, with a side track on the west, about 35 feet from the main track, and parallel with it. A public street of the village, extending east and west, crosses the main and side tracks. At the time of the accident there was a flouring mill on the west side of the side track near the intersection of the street with the railway track. North of the mill, and on the same side of the track, there were coal sheds and other buildings, which obstructed the view to the north of a person traveling eastward over the street crossing; but between the tracks the view to the north was unobstructed for some 1,000 feet. There was at the time standing on the side track and on the

[1] COLLINS, J., took no part.

north side of the street a box car, which extended into the street from two to six feet.

The plaintiff was familiar with the crossing and its surroundings. His own testimony as to the accident was to the effect that, as he was driving eastward along the street towards the crossing, and when about 300 feet away, he looked both to the north and to the south for a train, and saw none. His team was ordinarily gentle, and he had never had any trouble with them. As he approached the car standing on the mill track, his team was walking. He did not hear or know of any trains approaching. He heard no signals whatever. The mill was running, and made quite a noise, the wagon also, and the wind was blowing hard from the south. He did not stop his team until he was struck by the train. As he was driving around the car, some 35 feet from the main track, his near horse shied and started up, and he attempted to hold his team, but they went quite fast, and when he got onto the track he went "into darkness," and knew nothing. On his cross-examination he testified:

"Q. After they got over the side track, at what gait were your horses going? A. The near one was ahead, I was pulling on them. Q. At what gait were they going? A. They were not going much faster than a walk, if any. Q. As I understand it, the near horse started up a little? A. Yes, sir. Q. But didn't go into a run? A. No, sir. Q. They were under full control? A. Yes, sir; any more than one was ahead of the other. Q. You had them under control all right? A. I couldn't stop them immediately. Q. You could have stopped them if you found it necessary to stop them? A. I couldn't stop them immediately right there. Q. I say they were under your control? A. It depends what you call under my control. Q. They were not running away? A. No, sir. Q. Not so but what you could readily have stopped them in a few feet? A. In a short space of time." Upon being recalled he further testified as follows: "Q. Now, last evening, Vance, you stated that as you drove up there your horses were frightened at this car that stood there. A. Yes, sir. Q. And, in reply to my question of what you were doing from that time until you went into what you termed this 'darkness,' you said you were looking after your horses. A. Yes, sir. Q. Why were you looking after your horses? A. They became frightened, and it was rough there, and it was my duty to take care of them, to keep from being thrown out of the wagon. Q. Which way did they go,—directly across or angling about? A. No, sir; the near horse shying brought them kind of down the track south

west. Q. Were you on this spring seat? A. Yes, sir. Did it require all your attention to look after your team? A. Yes, sir; I tried to hold them. Q. Did you have any time for anything else? A. No, sir; it took all my time to hold them; I didn't have them under control then."

There was evidence tending to show that the train was running from 20 to 30 miles an hour when it reached the crossing. The defendant claims that it was the absolute duty of the plaintiff to stop his team, and listen, before he attempted to drive past the car into a place of danger. The plaintiff's conduct is not to be judged by the facts as they appeared after the accident, but as they appeared to him at the time. He was familiar with the crossing, and presumably knew that when he passed the car he would have a clear view of the main track to the north, and an opportunity, before driving upon the main track, of learning absolutely whether or not a train was approaching. His team was gentle, and he had no reason to anticipate trouble from them; but, according to his testimony, when he was in the act of passing the box car an unforeseen fortuity arose,—his team became frightened, and his attention was absorbed in controlling them, and before he was conscious of the situation they were upon the track, and he was struck. The time and manner of eliciting from the plaintiff testimony as to the vital factor in his case—the unexpected fright of his team and consequent engrossment of his attention in controlling them—were matters for the jury to consider in determining the credit they would give to his evidence. We cannot say, as a matter of law, that the evidence was not sufficient to justify a finding by the jury that his team became frightened and his attention absorbed, as claimed.

Our conclusion, from a consideration of the entire evidence, is that the question of the plaintiff's contributory negligence was for the jury.

2. The trial court in its charge to the jury stated that the plaintiff claimed that, after passing the car, his horses took fright, shied, and became unmanageable, and if that was true, and he exercised ordinary care in trying to control them, and they plunged onto the crossing, and it was physically impossible to prevent them, the jury must

take "that into consideration." The exception of the defendant to this statement, and the action of the court thereon, were as follows:

"Defendant excepts to the general charge of the court wherever the court charges the jury that the plaintiff claims he lost control of his horses at the crossing." By the Court: "Counsel has called my attention to this subject. I meant to state that the plaintiff claims that at or near the crossing his horses became unmanageable, and I will correct my charge in that way."

The defendant claims that there was no evidence in the case tending to show that plaintiff lost control of his team, or that they plunged onto the crossing, and assigns the giving of the instruction as error. The exception did not call the attention of the court to the claim now made; but the court seems to have understood the point of the exception, and modified the instruction. The modification seems to have been satisfactory to the defendant at the time, as the exception was not renewed. However this may be, the instruction, as modified, was not erroneous.

The defendant requested the trial court to give the following requests:

"(2) You are instructed that the undisputed evidence shows that, after the plaintiff got across the side track, he had a clear view of the railroad to the north of more than 1,000 feet, and that he had this view when at a distance of about 35 feet from the main track."

"(5) The jury are instructed that if you shall find that there were cars standing near the mill, one of which projected into the street, and if you shall further find that these cars were so placed by the mill men, in pursuance of their private business, and that the defendant had no notice, either actual or implied, that the cars were in this position, and if you shall further find that the position of these cars was the proximate cause of this accident, then the defendant is not liable in this action, and your verdict should be for the defendant."

The court instructed the jury with reference to the subject-matter of the second request as follows:

"If you find that the view of the railroad to the north was obstructed until the plaintiff came up to or passed over the side track, then it was his duty to look after he got past the obstruction, and when he came to a place where he could have a view of the railroad to the north. You are instructed that the undisputed evidence

shows that, after plaintiff got across the side track, he had a clear view of the railroad to the north. I don't know how many feet that was, but you will remember from the evidence. I think there is no doubt, from the evidence, that there was a clear view of some 30 feet wide between the two tracks; that the side track was between 30 and 35 feet from the main track."

The defendant excepted to the comments of the court in qualifying its second request, and assigns such modification as error, for the reason that it was entitled to a positive instruction that the plaintiff had a clear view of the track to the north of more than 1,000 feet, and that the instruction, as given, created a doubt in the mind of the jury whether this clear view was more than 30 feet in extent. This assignment of error is without merit. The court unqualifiedly instructed the jury, not only that it was the duty of the plaintiff to look after he passed the side track, but that, after he passed it, his view to the north was unobstructed; and it is perfectly manifest that the court by the words "a clear view of some 30 feet wide between the two tracks" referred to the distance between the side and main tracks, and not to the extent of the view to the north. The instruction was quite as favorable to the defendant as it was entitled to.

The fifth request was refused, and rightly so. It was not an accurate statement of the law, and was misleading, as applied to the facts of this case, even if it be conceded that there was evidence tending to prove the facts assumed in the request. The presence of the car in the street seems to have been a mere incident in the history of the accident, and not one of the proximate causes of the plaintiff's injury. If this had been a case where the plaintiff's team became frightened, and ran away, whereby he was thrown out and injured without any other intervening cause, the defendant would have some basis for its claim that it was error to refuse the request. But such is not this case, for the evidence is plenary that the defendant's negligence in driving its locomotive across the track, without giving any signals, was the proximate cause of the plaintiff's injury.

If, however, it be assumed that the evidence warranted a finding that the leaving of the car in the street was a proximate cause of the injury, the evidence would not warrant a finding that it was the

sole cause thereof. Where an injury is caused proximately by the concurring negligence of two or more parties, each is liable for the result. Johnson v. Chicago, M. & St. P. Ry. Co., 31 Minn. 57, 16 N. W. 488; Johnson v. Northwestern Tel. Exch. Co., 48 Minn. 433, 51 N. W. 225. The request ignored this rule, and was misleading, in that, if given, the jury would be liable to understand it as eliminating from the case the evidence as to the defendant's alleged negligence, if they found that the act of the mill men in placing the car in the street was a proximate cause of the accident.

Judgment affirmed.