MATTHIAS THOMAS v. HENRY H. SMITH.[1]

November 6, 1903.

Nos. 13,582—(72).

**Negligence—Evidence.**

*Held*, in a personal injury action, that the testimony was insufficient to justify the jury in finding that the defendant was negligent in standing certain boiler tubes upright in his shop, one of which fell upon the plaintiff, a workman, thereby causing the injuries complained of.

**Negligence of Fellow Servant.**

The rule laid down in Franklin v. Winona & St. Peter R. Co., 37 Minn. 409, that, where the negligence of the master combines with the negligence of a servant, the two contributing to produce an injury to another servant, who is himself free from negligence, the master is liable, *held* applicable in this case.

Appeal by defendant from an order of the district court for Hennepin county, Pond, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Reversed and new trial granted.

*Clapp & Macartney,* for appellant.

*Herbert G. Richardson* and *Chas. P. Barker,* for respondent.

COLLINS, J.

This action was brought to recover for personal injuries received by the plaintiff while in defendant's employ as a boilermaker's helper, defendant being the owner of the shop in which the accident happened. The verdict was for the plaintiff in the sum of $1,500, which was subsequently reduced by the court to $1,000. The appeal is from an order denying defendant's alternative motion for judgment notwithstanding the verdict, or for a new trial.

We are of the opinion that the order must be affirmed in part, but that a new trial should have been granted. The plaintiff had worked about this shop, which was a wooden building, boarded up on the outside of a balloon frame made of 2x4 studding, and wholly unfinished on the inside, for a few weeks as a common laborer, and was then set at work as a helper, some ten or twelve feet from where twenty or twenty-five

[1] Reported in 97 N. W. 141.

secondhand boiler tubes' or flues were standing with one end of each resting on the shop floor and the other against the boards on the end of the building and between the upright studding, which projected into the building four inches, and had been placed about two feet apart.. Each of these tubes was about fourteen feet in length, three inches in diameter, and eighty pounds weight. They were to be used for repairs as occasion required. One of them fell upon plaintiff while he was at work, causing the injuries in question.

In disposing of this appeal we will first take up the claim of defendant's counsel that there was no testimony tending to show that their client was negligent when standing the tubes vertically against the end of the building—this being the negligence alleged in the complaint. It cannot be held that it was negligence per se for defendant to stand these tubes upon end in the manner described by the witnesses, for the testimony failed to show that they were not properly inclined, or that they were not placed where they would, under ordinary circumstances, and under all conditions reasonably to be anticipated by defendant, remain in position without falling. This is particularly true when we find from the evidence that the lower ends were battered and rough by use, so that there would be less danger of their slipping upon the floor than if they were worn smooth, and that the boards forming the wall were outside the upright studding, thus forming panels on the inside of the building in which these ends rested.

The testimony of the plaintiff was that the tubes were inclined against the wall

> "As straight as possible, * * * so they would stand up." He further testified that, "I couldn't see how much they stood away from the wall." And again: "Well, they were standing pretty close—as close as possible not to fall over. * * * They were close put together, you know, one side of each other, and sometimes over each other, as far as I could see."

On cross-examination plaintiff stated, in answer to a question as to how far the lower ends of the tubes were from the bottom of the wall, that:

> "I don't remember. They was standing very close to the wall; that is, quite close. I never looked behind them, because

we couldn't look behind them.  They were standing close to
the wall, so they wouldn't topple back.  *  *  *  They stood
up very straight next to the wall, so that they wouldn't fall over,
so they would shake as little from the floor as possible."

Asked if he could tell how far away they were from the wall, his
answer was, "I couldn't tell."

Another witness, who was foreman of the shop at the time of the acci-
dent, testified that the lower ends of the first row of tubes were about
a foot and a half from the wall, and that the distance ran "all the way
from a foot and a half to three and a half feet."  This was all the testi-
mony as to the manner in which the tubes were set up against the wall
of the building and between the studding.  The shop foreman testified
that this way of setting up boiler tubes was usual in such shops.
"Sometimes," he said, "we lay them down and sometimes we stand them
up."  There was absolutely no testimony introduced by the plaintiff
tending to show how the tube in question came to fall; in fact he stated
that he did not know. · At the argument it was urged that the fall might
be attributed to the jarring of the building, caused by the machinery
operated therein, or perhaps to the moving of heavy boilers on the
floor, which were being repaired; but there was no testimony offered
by plaintiff from which the jury would be justified in finding that the
machinery was in motion, or that a boiler was being moved, or that
there was any jarring which operated upon the tube at this particular
time.

This was the condition of the proofs when plaintiff rested and defend-
ant's counsel moved to dismiss.  Upon a denial of this motion defend-
ant introduced Mr. Hartel, a fellow workman with plaintiff, who testi-
fied that on the morning in question he was rimming out a boiler near
the tubes; that he had occasion to raise it, using a jackscrew for that
purpose; that he put a plank about eight feet in length across the edge
of the boiler to prevent the jack from inclining too much; that he had
picked this plank up from the floor; that he generally used, and there
was provided for the purpose, an angle iron or a round bar; that he
then applied the screw, and lifted the boiler about a foot and a half;
that the plank broke, and one end of it was thrown with great force
against the tubes; that it knocked down the one in question, and while

falling it struck the plaintiff. There was no testimony tending to contradict this witness, and counsel for the plaintiff practically admit and assume that the accident happened in this way. On the evidence we must assume the same thing, for otherwise the cause of the accident is incapable of determination.

Two questions are raised, first, was there testimony tending to show that defendant was negligent when he caused the tubes to be placed in the position in which they were, with one end resting on the floor and the other against the wall? and, second, if there was not, and if at another trial this defect in the proof should be supplied, and the jury be warranted in finding that the broken plank caused the negligently placed tube to fall, could plaintiff recover? We are of the opinion that at the close of plaintiff's case there was no testimony tending to show that the falling of the tube resulted from defendant's negligence, and for this reason the plaintiff failed to make out his cause of action. It was incumbent upon the latter not only to show that he was struck by the falling tube, but that the negligence of the defendant in some way caused it to fall. The mere fact that tubes were placed in the position described, and that one of them fell down, would not of itself tend to establish actionable negligence for which the defendant could be held responsible should injury result, because such an accident might happen with the utmost care on defendant's part. The cause of the disaster was wholly left to conjecture and speculation. It might have resulted from a careless stacking up of the tubes, and it might not. Therefore the verdict cannot stand.

But this defect in the proof may be supplied at another trial, and if it should be sufficient to establish this negligence, and if it should further appear that Hartel was also negligent, and that the flying plank caused the tube to fall, the rule to be applied is that, where the negligence of a master combines with the negligence of a servant, and the two contribute and produce an injury to another servant, who is himself free from negligence, the master is liable. Franklin v. Winona & St. Peter R. Co., 37 Minn. 409, 34 N. W. 898; Delude v. St. Paul City Ry. Co., 55 Minn. 63, 56 N. W. 461. See also Johnson v. N. W. Tel. Exch. Co., 48 Minn. 433, 51 N. W. 375; King v. Chicago, M. & St. P. Ry. Co., 77 Minn. 104, 79 N. W. 611; Teal v. American Mining Co., 84 Minn. 320, 87 N. W. 837.

We do not regard it necessary to anticipate the rulings at another trial by commenting upon the alleged errors in the introduction of evidence and in the charge to the jury; nor further to consider the case except to say that the question of assumption of risk by plaintiff was for the jury.

Order reversed, and new trial granted.