JOHN SWANSON v. GEORGE W. OAKES and Another.[1]

December 9, 1904.

Nos. 14,078—(34).

**Death by Wrongful Act.**

In an action for personal injuries occasioning the death of plaintiff's intestate while in the service of defendants, at work upon a modern pile driver driving piles, *held*, upon the evidence, that it reasonably tends to support the following propositions:

1. That a wooden chock which defendants failed to supply was a useful and necessary appliance of the pile driver to prevent the fall of a heavy

[1] Reported in 101 N. W. 949.

piece of iron, weighing eight hundred fifty pounds, and called a "follower."

2. That whether the negligence of other fellow servants than intestate solely contributed or concurred with the negligence of the master in failing to furnish the chock was a question for the jury.

3. That upon the evidence the court properly held that the failure to furnish the chock and the adjustment of the ropes and knots of the pile driver, which was the particular duty of the foreman, was the negligence of the master.

4. That a verdict of $2,700, reduced to $2,000, in case of a death, where the beneficiary of the intestate was his mother, living in Sweden, was not excessive.

Action in the district court for Ramsey county by plaintiff as administrator of the estate of Emil Swanson, deceased, to recover $5,200 for the death of decedent and expenses of his last sickness. The case was tried before Bunn, J., and a jury, which rendered a verdict in favor of plaintiff for $2,700. From an order denying a motion for judgment notwithstanding the verdict, and denying a motion for a new trial provided plaintiff should consent to a reduction of the verdict to $2,000, defendants appealed. Affirmed.

*Morton Barrows,* for appellants.

*Cannon & Cannon,* and *Stan. J. Donnelly,* for respondent.

LOVELY, J.

Emil Swanson, while engaged in the service of defendants upon a modern pile driver in placing timbers to construct the foundation of a building in St. Paul, received injuries which caused his death. His administrator brings this action to recover damages, upon the ground that his injuries resulted from the failure of the defendants to furnish suitable instrumentalities for his use. There was a verdict for the plaintiff. A motion by defendants for judgment notwithstanding the verdict or a new trial was denied. From this order defendants appeal.

The piles were about fifty feet in length, and the operation of setting and driving them was nearly as follows: A rope was attached to a drum operated by an engine; it was passed over a pulley at the top of the driver, and thence conducted to the ground, and tied to the end of the pile to be put in position, when, through the operation of

the drum and engine, the pile was drawn upwards and brought into a perpendicular position between two leads, one on either side of the pile driver, where it was held temporarily in place to the uprights. Moving up and down between the leads were two appliances, the uppermost a hammer, and immediately below it a follower. The follower was a solid cubical piece of cast iron, slightly concave on its lower surface, and weighing about eight hundred fifty pounds. In driving the pile, the follower had to be lowered and rested upon the pile, when it would receive a heavy blow from the hammer, to prevent its splitting. The hammer and follower had grooves on their sides fitting in the leads, and were retained by this means in position. When the pile was being actually driven, the follower would remain at rest on the pile, and the force of the impact of the hammer tended to press the pile into the ground, but, while the pile was being placed, the hammer and follower had to be drawn to the top of the driver. There was an appliance called a "chock," which was a piece of wood horizontally placed on a platform of the frame, a short distance below the top, and intended to remain far enough under the follower to prevent it from going below it in case of accident, or providing the engine and ropes attached did not hold it in place.

Intestate was required, as he did in this instance, to stand below the follower to guide the pile, and it was claimed that he should have been protected by the chock from injury from a fall of the follower whose sudden precipitation caused his death. The business was in charge of a foreman named Swanson, whose duty it was to connect the gearing and ropes with the hammer and follower, and then with the engine. The pile driver had been placed in position four days before intestate commenced work, but the chock referred to, which was usually applied to pile drivers, was omitted. It became necessary, in the performance of the work at the time of the accident to place a pile in position. It was unusually long, and was pulled by the engine into place between the leads, so that it struck and loosened the follower, and, while intestate was extending his body beyond the face of the leads, this heavy appliance suddenly fell and struck him to the ground, whereby he received the injuries from which he died.

The cause was submitted to the jury by the trial court upon instructions to the effect that, for any negligence of the engineer who was in

charge of the engine, or the foreman Swanson, contributing to the accident, plaintiff could not recover, but that defendants were liable for the failure of the master to provide and maintain the chock in its place, if it concurred in intestate's injury and death. The jury, in disposing of the cause, found specifically that the foreman could not have prevented the pile striking and loosening the follower if he used ordinary care, and also that the pile driver and its equipments were not at the time of the accident reasonably safe.

The principal contention at the trial was upon the facts, it being claimed for defendants that the use of the chock as a means of protection, while it was shown to be usual and useful to prevent accidents, was not practical; that the adjustments of ropes and knots made it impossible to use it with utility and benefit; but an examination of the entire evidence satisfies us that this was a question of fact and properly submitted to the jury, hence the court was not authorized to order judgment for defendants. Having reached this conclusion, it follows that whether the negligence of the fellow servants, either in the operation of the engine or the adjustment of the ropes to the pile or the hoisting of the same, solely occasioned the accident, was also a question of fact; and if the omissions of the fellow servants did contribute thereto and combined with the negligence of the master in not providing the means of protection afforded by the chock, such omissions of the master in this respect constituted actionable negligence, upon which ground the verdict must be sustained. Franklin v. Winona & St. P. R. Co., 37 Minn. 409, 34 N. W. 898; Delude v. St. Paul City Ry. Co., 55 Minn. 63, 56 N. W. 461; Johnson v. Northwestern Tel. Exch., 48 Minn. 433, 51 N. W. 225; King v. Chicago, M. & St. P. Ry. Co., 77 Minn. 104, 79 N. W. 611; Thomas v. Smith, 90 Minn. 379, 97 N. W. 141.

It seems quite clear upon the special findings of the jury, which are reasonably supported by the evidence, that it was a fair question of fact whether the master had performed his duty in furnishing a substantial appliance shown to be in ordinary use to prevent the fall of the hammer which occasioned the unfortunate accident in this case. The application of the ropes, and their adjustment to the hammer and follower with which they were connected, was a duty assumed

and performed by the foreman, Swanson, and in connection with his duty, as stated above, it was claimed that the knots were so large that the chock could not be used, whereby the foreman took it upon himself to dispense with it. The finding of the jury disposes of the question whether the chock could have been utilized in favor of the plaintiff, and, upon the view we have taken that this special finding is supported by the evidence, it seems to be unnecessary to consider the objection made to the charge of the court in submitting the question whether this act of the foreman was chargeable to defendants. Even if the arrangement of the ropes and knots tended to render the use of the chock unavailing, the foreman, Swanson, by such adjustments, which were to continue during the work and not to be changed from time to time, to facilitate its progress, was the representative of the defendants, and performing a duty imposed upon them. Perras v. A. Booth & Co., 82 Minn. 191, 84 N. W. 739, 85 N. W. 179; Peterson v. American Grass Twine Co., 90 Minn. 343, 96 N. W. 913; Borgerson v. Cook Stone Co., 91 Minn. 91, 97 N. W. 734.

The recovery in this case was for $2,700, which was reduced by the trial court to $2,000, and it is claimed that this verdict is excessive. Testimony tended to show that intestate had no family, but that his mother, residing in Sweden, depended upon his efforts to some extent for her support. He was a young man, twenty-six years of age, in good health, apparently competent and faithful in the performance of his duties, and there is no reasonable ground for objection to the amount of the recovery.

The order denying a new trial is affirmed.