WILLIAM JENNINGS *vs.* IRON BAY COMPANY.

August 21, 1891.

**Master and Servant—Care of Appliances.**—It is not incumbent upon a master, who has caused a scaffold to be erected, on which planks, suitable in quantity and quality, are laid to walk upon in the customary manner, without being fastened, to see to it that these planks are adjusted and in proper place at all times. The adjustment of such planks is incident to the service required of a servant who uses the same.

Appeal by defendant from a judgment of the district court for St. Louis county, where the action was tried before *Mills*, J., a verdict of $2,500 rendered for plaintiff, and a motion for a new trial denied.

*Kitchel, Cohen & Shaw*, for appellant.

*McGindley & Cotton*, for respondent.

COLLINS, J. This was an action to recover for injuries sustained by plaintiff, a carpenter by trade, in falling from a scaffolding. He

had been engaged for some time with other workmen in the erection
and completion of buildings designed for use in defendant's manu-
facturing business, and about which the usual scaffolds had been
constructed by these workmen, although it appears from the testi-
mony that the plaintiff did not assist in constructing the one from
which he fell.   This was on the inside of the blacksmith shop, and
had been erected to facilitate the putting-up of fixtures and ma-
chinery.   The materials for the scaffold were ample in quantity and
of good quality, and it had been built in the usual manner, uprights
being placed at intervals along the wall, and directly opposite, 12
feet distant into the room, similar uprights were placed with cross-
pieces running from one to the other, on which planks were laid for
walks or floors, two or three feet in width near the wall, and about
the same at the inner edge of the frame, the space between being
uncovered, except as planks might be thrown across to walk on.
As is the universal custom, none of these planks were fastened, but
were laid loosely, that they might be easily moved and shifted from
place to place on the scaffold.   All of the planks used for walks or
floors were of sufficient length to reach from one cross-piece to
another, and to lap all that was required for safety.

The plaintiff was directed to go on this scaffold, and suspend
the cross-piece between the first and second sections, by means of
a hanger, to a beam above, and at a point about two feet from
the wall, in order that the upright to which the cross-piece was
fastened might be removed out of the way of certain machinery.
He stood on two planks, one lying on the other, at the south
end of the second section, and securely nailed the hanger to the
beam above.   He then stooped, and, striking towards himself, drove
a nail partly through the hanger, as it rested against the south-
erly surface of the cross-piece beneath.   The effect of this must
have been to spring the cross-piece, more or less, out from under
the ends of the plank in the first section.   The ends of the plank
on which plaintiff stood overlapped the ends of one of the planks
in that section, so that when in an upright position the extent or
manner of its bearing upon the cross-piece was concealed from
his observation.   But when coming upon the scaffolding, or when

stooping to drive, the nails, the plaintiff, had he looked, could have seen the exact condition of things, for there was nothing to prevent, and it was easily discoverable; or, had he glanced at the other end of the plank, he would have seen that it projected to the north much further than it should when in proper position. To finish driving the nail into the hanger and cross-piece, plaintiff stepped over on to the single plank just mentioned, when it fell, evidently because of an inadequate bearing on the cross-piece, precipitating him to the floor below, and causing the injuries which he now claims are imputable to defendant's negligence. The scaffolding had been used by other workmen in safety, and plaintiff had, in the morning of the day on which he fell, been standing while at work upon the south end of the same plank. He had also observed before the accident that the two planks on which he first stood had gotten out of place.

There is nothing whatever in the case from which it can be inferred, even, that the men who constructed the scaffold, and who first laid down the flooring, had not performed their work in a proper manner. Boards or planks, when used for this purpose, are always laid down loosely, in order that they may be shifted or moved as needed, and it is inevitable, aside from necessary shifting and moving, that they become more or less displaced by use. The defendant corporation cannot be declared guilty of negligence, unless we hold its duty to have been to see that the planks which it had furnished, suitable in quantity and quality for the purpose, were kept exactly in place at all times, notwithstanding the fact that they were liable to be shifted by the men from point to point as needed, and were also subject, continually, to inadvertent displacement, the natural result of the manner in which they were laid down and used.

No such degree of care was required of the defendant. There was no defect in any of the materials of which the scaffold had been constructed, nor had it been built in a faulty manner. The plaintiff was injured by the falling of an adjustable part of the structure, not by the giving away of a part of the structure itself, the result of using poor material, or of defective construction. Nor were the inju-

ries received because imperfect planks had been furnished, out of which the walks or floors were to be made. The case is wholly unlike that of *Kelly* v. *Erie Telegraph, etc., Co.*, 34 Minn. 321, (25 N. W. Rep. 706,) where the plaintiff was at work on the top of a telegraph pole when it fell; nor is it analogous to that alleged in the complaint in *Fraser* v. *Red River Lumber Co.*, 42 Minn. 520, (44 N. W. Rep. 878,) wherein the plaintiff's right to recover for injuries sustained by the breaking of a step used in ascending to the top of a pile of lumber, and made by extending one of the boards of the pile out therefrom about 20 inches, was considered.

Again, the views expressed in *Eicheler* v. *Hanggi*, 40 Minn. 263, (41 N. W. Rep. 975,) in reference to the plaintiff's contributory negligence, are pertinent to the facts here. The duty of the defendant corporation did not extend so far as to require it to attend to or to secure the proper adjustment and position of the planks which were provided by it for the workmen to stand upon when doing their work, for the adjustment and proper placing of these planks was properly incident to the service which was required of the workmen. The plaintiff knew that the planks were laid down loosely, liable to be moved, purposely or accidentally, at any moment, and it was his duty to see that they were in place when he went upon them. Further than this, he discovered before falling that the planks in the second section, overlapping the one which fell, had been shifted by walking thereon, and were out of place. This should have suggested that the one underneath might have been disturbed. The end which rested or which should have rested upon the cross-piece was covered from above, but it was not concealed so that the exact condition could not have been ascertained by a slight examination, while plaintiff was driving the nail into the lower end of the hanger. Or a casual glance towards it, as he came up the ladder on to the scaffold, would have disclosed the situation, or it could have been discovered had plaintiff noticed that the south end of the plank projected further than it should. He seems to have paid no attention to the subject, and must be deemed to have neglected ordinary caution in doing his work.

It is unnecessary to discuss the defendant's claim that those who erected the scaffold were fellow-servants of the plaintiff, or that, when

obtaining employment, he assumed whatever risks were incident to the use of the scaffold from which he fell.

Judgment reversed.