JAMES GITTENS v. WILLIAM PORTEN COMPANY.[1]

November 20, 1903.

Nos. 13,621—(81).

**Master and Servant—Defective Appliance.**

A hoist was used for the purpose of elevating material to the second story of a building in course of erection. It was triangular in form, simple in design, and easily made. Its construction and operation upon the roof were not immediately supervised by the foreman or master, but the material was selected and it was put together by the carpenters engaged upon the building. Plaintiff, having been called from another building, and having been directed to assist in operating the hoist, was injured by reason of its being improperly fastened. *Held*:

1. The hoist was not an appliance within the rule that a master is obliged to furnish tools and appliances reasonably safe for the uses to which they are to be put.

[1] Reported in 97 N. W. 378.

2. The workmen who selected the material and constructed the hoist, also those who caused it to be insecurely fastened, were fellow servants with plaintiff, and the master was not liable for negligence on the part of such workmen, either in the construction, fastening, or operation of the hoist.

3. Under the evidence, there is no application in this case for the rule that the master was required to furnish plaintiff a reasonably safe place within which to carry on the work.

Action in the district court for Ramsey county to recover $25,000 for personal injuries. The case was tried before Brill, J., who directed a verdict in favor of defendant upon the close of plaintiff's testimony. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*C. D. & Thos. D. O'Brien,* for appellant.

*Barrows & Morrison,* for respondent.

LEWIS, J.

Respondent company was engaged in the construction of the Great Northern car shops on Dale street, in the city of St. Paul, consisting of six separate buildings located in the immediate vicinity of each other. Appellant was engaged as a general assistant in different kinds of work about the buildings, and had several years of experience as a bridge carpenter, and was considered an all-around competent workman. The apparatus used in elevating the lumber and material to the roof was called a "hoist," made of three pieces of plank in the form of a right-angle triangle. On the day prior to the injury, appellant, with another workman, had been assisting in operating the hoist involved in this controversy, and had thereafter been employed in a similar manner in handling material with another hoist upon one of the other buildings. While appellant was so engaged, he was called by the foreman to help in elevating material with the hoist in question. According to the undisputed testimony, appellant and a fellow workman left the building on which they were at work, and went upon the one where the hoist was situated; appellant taking his position at the edge of the roof, near the cornice, and, assuming that the hoist was properly adjusted, leaned over the edge of the building to guide the rope which ran through a pulley and was attached to a bundle of flooring being pulled up by means of a horse on the ground

90 M.—33

below, when, without warning, the hoist tipped over and was pulled to the ground by the weight of the load, taking appellant with it. This action for damages is based on the theory that respondent was guilty of negligence in failing to provide a reasonably safe appliance and a reasonably safe place for the performance of the work.

At the close of the case respondent rested, with leave to move for a motion to direct a verdict upon the following grounds: That appellant had failed on all the evidence to establish a prima facie case against respondent; that there was no evidence to establish negligence approximately causing the injury; that it affirmatively appeared from the evidence that the negligence, if any, was that of appellant's fellow servant; and that as a matter of law appellant assumed the risk attending his work in connection with the hoist. Motion granted, and verdict directed in favor of respondent.

There are two well-defined rules established by the decisions of this court in respect to the duty of the master in furnishing tools, machinery, and appliances used by employees: First. Where the apparatus or appliance is furnished by the master, and is not one required to be constructed in the ordinary progress of the work, then the duty rests upon the master to see that such appliance is reasonably safe for the use intended. In such case it is immaterial whether the master manufactures the appliance or whether it is purchased. The principle is the same, and rests upon the natural right of the workman to rely upon such appliance as being what it is represented to be. The master has a better opportunity to know of and test the sufficiency of the apparatus, and his experience as an employer or master better qualifies him than an ordinary employee to pass upon its efficiency. Second. Where the structure, apparatus, or appliances are a part of or incidental to the work being carried on, and the workmen construct them as a part of their employment, the master is relieved from such special supervision, and each employee assumes the risk attending the negligence of fellow workmen in respect thereto.

The latter rule is illustrated by the cases of Fraser v. Red River Lumber Co., 45 Minn. 235, 47 N. W. 785; Marsh v. Herman, 47 Minn. 537, 50 N. W. 611; Oelschlegel v. Chicago G. W. Ry. Co., 73 Minn. 327, 76 N. W. 56. It is often the subject-matter of special agreements, and the master may voluntarily assume the responsibility of furnish-

ing such appliances or structures, although ordinarily they would be treated as a part of the work. In such cases the employees have a right to assume that the master will perform his duty, and an illustration of this principle is found in Sims v. American S. B. Co., 56 Minn. 68, 57 N. W. 322, and Blomquist v. Chicago, M. & St. P. Ry. Co., 60 Minn. 426, 62 N. W. 818. There are also cases where, from the peculiar character of the temporary structure, and where it is put to some unusual test, the person injured has had no knowledge or opportunity to judge of its efficiency; and then the master will be liable for its faulty construction. This principle is illustrated in the case of Hagerty v. Evans, 87 Minn. 435, 92 N. W. 399.

Was the hoist in this case an appliance which required the master to see that it was properly constructed, or was it an apparatus to be made, as occasion required, by the workmen engaged in the general enterprise? We have no doubt that, if a complete derrick or hoist had been manufactured by respondent, or purchased by it, and sent to the place of work, and an injury had occurred by reason of some defect therein, the master would be liable under the general rule; but from the evidence we are forced to the conclusion that the hoist was not such an implement. No particular material was furnished for its construction, and the necessary planks were selected from material on the ground, used in the erection of the building. No particular class of workmen was designated by the master to select the timber and construct the hoist, in the sense that such employment became an independent part of the work, within the doctrine of Sims v. American S. B. Co., supra. The affair was of a simple design, easily and readily put together, and for a temporary purpose. The fact that the foreman directed such a hoist to be made and used at the particular time, did not, under the evidence in this case, make the master liable upon the principle that he had voluntarily assumed the responsibility of its construction. Appellant was a fellow workman with the carpenters engaged in laying the floor. He assisted in elevating and carrying the lumber to them, and they put it in place; and, upon occasion, he too, was engaged in nailing down flooring.

Further, if the hoist was properly made, and the injury was not occasioned by any inherent defect, but occurred because it had been

improperly fastened to the roof, the master is not liable for the same reason above stated. In the mind of the trial court the evidence was conclusive that the accident was occasioned by the improper fastening of the hoist, and, as we read it, the evidence indicates clearly that it had been in use the day before, but in the meantime some of the workmen had loosened it for the purpose of laying a part of the floor, and had failed to refasten it. If, then, the injury was caused by the act of the workmen who thus interfered, such act was performed by the fellow servants of appellant; or, if it was not so occasioned, but some outside force or person had removed the fastenings, then the master was not responsible for the result, unless, before permitting the men to go to work, it was his duty to make an inspection of the hoist, and determine whether or not it was in proper condition for use. Here again the evidence fails to disclose that this duty had been imposed upon the foreman by the master, or had been assumed by either of them in the ordinary course of the work. On the contrary, it is conclusive that not only in the erection of the hoist, but in the placing of it and in the manner of handling it, appellant and his other co-employees, together with the foreman, were engaged in a like enterprise as fellow workmen. The duty of seeing that the hoist was properly fastened was not imposed upon the master by the nature of the work, as in Hagerty v. Evans, supra, and such obligation was not assumed by the conduct of the parties. The foreman, appellant, and all the workmen were engaged in carrying on the general enterprise of building, and the foreman simply directed the progress of the work. Nothing being assumed that duty of fastening the hoist, a mere direction to appellant that he assist other employees in operating it would not change the foreman's relation to the other workmen. He still remained a fellow-servant.

There is no application in this case of the doctrine that the master was required to furnish a reasonably safe place for appellant to work in. The erection, fastening, and operation of the hoist constituted a mere detail of the general work, and the contract of hiring contemplated that appellant assume the risks incident thereto. "The defendant, as master, was under no implied contract with the plaintiff that other servants engaged in the same employment should adopt or pursue unsafe methods." Corneilson v. Eastern Ry. Co., 50 Minn. 23,

52 N. W. 224.   See also Ling v. St. Paul, M. & M. Ry. Co., 50 Minn. 160, 52 N. W. 378, and Dixon v. Union Ironworks, supra, page 492.
   Order affirmed.