### JAMES COSTELLO v. JOHN FRANKMAN and Others.[1]

April 27, 1906.

Nos. 14,650—(16).

**Safe Appliances Becoming Unsafe.**

Appliances and implements may be suitable and safe when used in the performance of certain work under certain conditions, but utterly unsafe when employed in similar work under other conditions. If the master furnishes appliances under conditions, when from the nature of the work they are liable to become unfastened and thus subject employees to injury, the master is open to the charge of having furnished unsafe and unsuitable appliances. The rule is not changed in this case by the fact

[1]Reported in 107 N. W. 739.

that the hooks and hinge gate in the pulley block might have been rendered safe by proper tying or mousing.

### Duty of Servant.

As respects an unskilled workman, having no knowledge of the facts, such mousing was not a duty to be performed by the employees.

### Verdict not Excessive.

Damages assessed by the jury not excessive. No errors.

Action in the district court for Ramsey county to recover $50,000 for personal injuries. The case was tried before Bunn, J., and a jury, which rendered a verdict in favor of plaintiff for $5,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Morton Barrows,* for appellants.

*James R. Hickey,* for respondent.

LEWIS, J.

Appellants were engaged in constructing a span of the so-called High Bridge in St. Paul, and for that purpose erected a scaffold, or falsework, consisting of timbers upon the top of which they were operating a derrick located on a traveler. The engine was stationed on the bank of the river and operated a wire cable which was conveyed to the derrick, and directed in its course by means of three pulleys fastened at different places in the trestlework. At the time of the accident appellants were engaged in raising certain timbers from the river up through the falsework to the top of the structure by means of the derrick and cable. Respondent was twenty one years old and an unskilled laborer. He had been employed in rafting timbers for use in constructing the bridge, and on the day of the accident was directed by the foreman to take a position upon a platform within the falsework at a point about seventy five feet above the river, and to direct the cable and the timber attached thereto in its passage up through the structure. The platform on which he stood consisted of loose boards placed on stringers, and was just above the cable at a point where it crossed the trestlework from one pulley to another, and he was standing on the platform not far from the pulley which gave the cable a perpendicular direction. Very soon after taking his

position, and while engaged in guiding a timber attached to the cable in its course upward, the timber struck one of the cross-pieces within the structure which made it necessary for the engine to slack up on the cable, and in the process of so doing the pulley within which the cable ran became detached from the chain to which it was anchored to a part of the trestle, thereby releasing the pulley. The cable, being so released, tended to assume a straight line between another pulley and the derrick, and thereby overturned the platform and precipitated respondent into the river about eighty feet below.

The act of negligence charged in the complaint is that appellants furnished an improper and unsafe pulley block and fastenings, and that the pulley block had an unsafe and dangerous gate or hinge which was liable to come open and did come open and allowed the cable within to escape, and that the chain fastening the pulley became unfastened by reason of an improper and unsafe chain hook which held the pulley block to the timbers. The pulley block was arranged with a link, or gate, which could be opened and the cable inserted therein, and then the link could be slipped down over the hook. On the underside of the pulley block was an ordinary hook through which a chain was run and attached to one of the timbers of the trestlework. As the work progressed it occasionally became necessary to shift these pulleys, and it developed at the trial that it was feasible, and generally the practice, when such pulleys were in use to mouse the so-called gate or link; that is, to tie down the link or gate with a piece of rope in such manner that it could not come open and allow the cable within to slip out. It was also feasible to mouse the other hooks above described.

It is conceded that on this occasion none of the hooks, nor the gate of the pulley block were moused. The evidence tended to show that the accident happened by reason of the fact that the cable escaped from the pulley because it was not properly moused, or because the hook on the underside of the cable was not properly attached to the chain which held it in place, or that the chain which was placed around one of the timbers of the falsework was not furnished with a suitable hook, or was not moused, and as a result of the slacking of the cable, either one or all three of these hooks became detached.

The act of negligence is not predicated upon either one alone but upon all. The allegations of the complaint are sufficiently broad to point out that these several hooks and chains were improper appliances. It was not necessary to state that the pulley block was an improper appliance for the reason that appellants did not keep the gate properly tied. The pleader was not required to particularly state what kind of a hook would be safe to use on the underside of the pulley block, nor was it necessary to specify the particular shape or character of the hook upon the chain which held the pulley hook, nor to allege that the appliances became improper because they were not moused while in use. Appellants were not misled by the allegations of the complaint in these particulars, and so when it developed at the trial that the gate in the pulley block, and the other hooks, were dangerous and defective upon this occasion for the reason that they had not been properly moused, respondent was not required to amend his complaint and it was perfectly competent to receive evidence of those facts in support of the general allegations. If, in this instance the hooks were likely to become unfastened as the work was carried on, they were improper appliances for that purpose, and appellants were required to see that the hooks were properly moused, if they insisted upon using them. The fact that such implements may be safe and proper for some kinds of work, and under some circumstances, but unsafe and unsuitable under other circumstances, does not change the character of the duty originally resting upon the master. It amounts to a failure to provide proper appliances for the work to be carried on.

Appellants cannot justify their conduct by claiming that the appliances were of the ordinary standard character found in the market, and that they owed no duty to their employees after placing the same in their hands. They cannot be excused upon the plea that the mousing of the hooks was a mere detail to be looked after by respondent's fellow servants. The workmen whose duty it was to attend to the cable, pulley and hooks, were not fellow servants of respondent but representatives of the master to see that the appliances were kept safe. The trial court, therefore, took the correct view of the case in submitting to the jury the question whether the appliances furnished were suitable for the work, and no exceptions were made to the charge.

This being our conclusion it is unnecessary to refer to the other assignments of error, except as to the amount of the verdict. The man fell about eighty feet, struck upon the end of a log raft in the river, and how he escaped death is a miracle. His physicians claim there were no bones broken, but that he had what is called concussion of the spinal cord. At the time of the trial respondent was unable to walk, but could move about with the aid of crutches. None of the doctors stated specifically that his injuries were incurable, but neither did they indicate the probable length of time he might suffer from them. Appellants did not introduce any evidence as to the nature of the injuries, but asked the court to reduce the verdict as excessive upon the ground that there was no definite evidence sufficient to show that respondent's injuries were of such permanent character as to justify the amount returned by the jury. The fact that the physicians did not attempt to specify the length of time the injuries would exist, casts no discredit upon their testimony. The severity of the fall, and the fact that he was unconscious for a long time, that he had no control over his limbs, and that his condition is pronounced the result of spinal concussion, are a sufficient basis upon which a jury may determine the amount of damages, and we find no reason for interfering with their decision.

Order affirmed.