# CHARLES E. HAMLIN v. LANQUIST & ILLSLEY COMPANY.[1]

July 22, 1910.

Nos. 16,610—(119).

**Injury to servant — defective derrick — charge to jury.**

Plaintiff's intestate was a member, but not the foreman, of defendant's structural iron crew, engaged in the construction of a high building. Defendant used large steel derricks. The heel of each of the two masts thereof, when erected, rested in a steel socket, which kept the mast from slipping sideways. Defendant provided certain clamps, which could be fastened over the bottom of the masts, whose function it was to hold the mast in position and to prevent it from kicking out of the socket. The derricks were moved from place to place as the work progressed and raised steels for two floors. They were then moved up two floors, and so on. Immediately prior to the accident a derrick had been set up by the crew of iron workers, of which deceased was a member. The derrick was set up. The clamps were not used. At this time the derrick was on the fifth floor some sixty-five feet above the ground. There was no floor between what were known as the third and fifth floors. While defendant's servants were lifting a portion of the lower derrick and placing it into position, the mast of the lifting derrick slipped out of position and fell. Deceased was thereby caused to fall. He subsequently died from injuries he received. It is *held*:

1. That the trial court properly refused to direct a verdict for defendant, in view of the testimony that before the accident the head foreman's attention was called to a movement in the mast which indicated that something was wrong in the arrangement and operation of the derrick, and that the head foreman went above to see about the matter. The court properly charged that if the situation were such that in the exercise of ordinary care the foreman did or should have seen the defect, and did or should have remedied the same, then the defendant was guilty of negligence.

2. A majority of the court (Jaggard, J., dissenting) are of opinion that a new trial should not be granted because the trial court charged that "it was the duty of the defendant to exercise ordinary care in seeing to it that this derrick was properly equipped and like care in keeping it in a reasonably safe condition," and because the court refused to charge that if the

[1]Reported in 127 N. W. 490.

master supplies suitable material for the construction of an appliance, which he is not obliged and has not undertaken to furnish in a completed state, and the workmen themselves construct it according to their own judgment, the master is not liable for the manner in which they use the materials supplied.

3. As a matter of law plaintiff did not assume the risk and was not guilty of contributory negligence.

Action by the administrator of the estate of Charles C. Nichols, deceased, in the district court for St. Louis county, to recover $5,000 for the death of his intestate.

The complaint, after allegations concerning the construction of the derrick mentioned in the opinion, alleged that defendant negligently reversed the position of the boom in the derrick so that, instead of extending the same outward from the mast in the opposite direction from where the stiff-legs were attached to the mast, it extended the boom while at work away from the mast in the same direction as were said stiff-legs, in such manner that said stiff-legs could not hold the mast in its proper position, nor counteract the weights then applied at the end of the boom, and defendant negligently failed properly to weight down and fasten the derrick or cause the bottom of the mast to be held in the casting, and failed to make proper provision to prevent it from being tipped over in operation; that in such condition the derrick and all its appliances were unsafe and dangerous to use in raising or lowering any heavy weight and within the knowledge of defendant exposed its employees to great and imminent danger, but notwithstanding this it negligently began and continued the operation of the derrick in such condition, and while so in operation the mast was suddenly raised or pulled out of its socket and the derrick, including the mast and stiff-legs, was pulled over and to the ground; that the intestate was ignorant of any risk connected with the operation of the derrick and defendant negligently failed to give him any warning, but required him to continue his work there; and that defendant negligently failed to properly supervise and direct the method in which the derrick should be used. The answer denied that the injury or death was caused by the negligence of defendant.

The description of the derrick is found in the opinion. There was evidence that the derrick rested on two sills each fifty feet long; that the stiff-legs stood on the extreme end of the sills, and the mast stood at the angle of the sills and was forty-five feet long; that the two stiff-legs supporting it were ninety feet long and set at an angle of forty-five degrees; that the boom was one hundred feet long.

The case was tried before Dibell, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Howard T. Abbott,* for appellant.

*John Jenswold, Jr.,* for respondent.

PER CURIAM.

The intestate of plaintiff and respondent was employed by defendant and appellant in the construction of the new courthouse building in Duluth. Various crews of men were employed. The defendant insists that every member of these crews had a foreman or boss in charge of them. Deceased, according to defendant, was foreman of the crew here involved. The jury found otherwise. He must be here regarded as merely a member of the structural iron crew, in which work he had been engaged for years previously.

Defendant used certain large steel derricks. Each derrick had two stiff-legs, composed of timbers designed to hold the mast rigid and in an upright position. The mast and boom were equipped with the usual lines, blocks, pulleys, etc. The heel of each of these masts, when erected, rested in a steel socket or hole in a casting which tended to keep the mast from slipping sideways. Steel goosenecks were arranged at the top of each mast, through which wire cables were passed. These cables were brought down and wrapped around the steel framework of the building upon which the derrick stood. By the use of turn buckles these cables were set and fastened into position by means of these stiff-legs and cables. Defendant also provided certain dogs or clamps, which could be fastened over the heels or bottom of the masts, which had a tendency and whose function was to assist in holding the mast in position and to prevent

the bottom of the mast from kicking out of the socket or hole. These clamps were sometimes used and sometimes not at all. The derricks were moved from place to place as the work progressed. They remained in one place until the work of raising steel for two floors was done. They were then moved up two floors, and so on.

Immediately prior to this accident the derrick in question was set up by the crew of iron workers of which deceased was a member, and it must be assumed for present purposes not its foreman. Anderson, the head foreman of the iron workers' crew, was present at various times while this derrick was being put up. The derrick was set up. The dogs or clamps provided by defendant were not used. While defendant's servants were lifting a portion of the lower derrick and placing it in position, the mast of the lifting derrick slipped out of position—i. e., out of its socket—and fell down, causing the deceased to fall. From the effects, he subsequently died. At this time the building was partially constructed. The derrick was on the fifth floor, some sixty-five feet above the ground. There was no floor between what was known as the fifth and third floors. There was conflict of testimony as to whether there was any lashing of the mast on this derrick. The jury returned a verdict for plaintiff.

This appeal was taken from the order of the trial court denying defendant's usual motion in the alternative.

1. The first question presented by the record is whether the trial court should have directed a verdict for defendant. It is clear that on this point the trial court ruled correctly.

The court charged in part that if the witness whose testimony appears in the record called the attention of Anderson, the head foreman, to a movement in the mast which indicated that something was wrong in the arrangement and operation of the derrick, and Anderson went above to see about it, and the condition and situation were such that in the exercise of ordinary care Anderson would or should have seen a defect, and in the exercise of ordinary care would or should have remedied the same, "then you can find that the defendant was guilty, although at the time the derrick was put up it was in a proper and safe condition for operation." The record justified the

instruction. It follows that the trial court properly refused to direct judgment for defendant notwithstanding the verdict.

2. The question then arises whether a new trial should have been granted because the court charged the jury: "It was the duty of the defendant to exercise ordinary care in seeing to it that this derrick was properly equipped and like care in keeping it in a reasonably safe condition," and because the court refused to charge that, "when a master has furnished proper and reasonably safe appliances for the work to be done, his personal duty does not extend so far as to require him to attend to the proper regulation and adjustment of the parts of the implement or machine, and if an accident occurs because of a want of care on the part of the men erecting or adjusting said machinery, the master is not liable." There were other requested and refused instructions to the effect that the work of erecting the derrick under circumstances here presented "was part of the details of the work of construction," and that under the circumstances the negligence of the servants erecting the derrick was the negligence of a fellow servant, for whose negligence defendant who had provided the clamps was not responsible.

On this point the members of the court do not agree. A majority of the court are of the opinion that under the circumstances of this case, the height of the building and the size and weight of the derrick, it (the derrick) was an appliance which the master undertook and was required to furnish completely set up and ready for use in a safe condition, and in this respect differed from a scaffold and most other temporary appliances, as to the construction and sufficiency of which the servants are required to exercise a discretion and assume the risk of each other's negligence. Blomquist v. Chicago, M. & St. P. Ry. Co., 60 Minn. 426, 62 N. W. 818; Carlson v. Northwestern Tel. Exch. Co., 63 Minn. 428, 65 N. W. 914. Therefore the trial court correctly instructed the jury it was defendant's duty to exercise ordinary care in seeing to it that this derrick was properly equipped and like care in keeping it in the same condition.

JAGGARD, J., (dissenting.)

One of three rulings governs this case:

First. There is no doubt as to the general principle that a master must indemnify a servant who is injured by the negligence of a co-servant, when the delinquency consisted in a failure to discharge properly either the function of furnishing the instrumentalities with which the business is carried on or the function of keeping those instrumentalities up to the legal standard of safety while they continue to be used. 2 Labatt, Master and Servant, §§ 566, 567. And see Brown v. People, 81 Vt. 477, 71 Atl. 204, 22 L. R. A. (N. S.) 738.

Second. "If the master supplies suitable material for the construction of an appliance which he is not obliged, and has not undertaken, to furnish in a completed state, and the workmen themselves construct it according to their own judgment, the master is not liable for the manner in which they used the materials thus supplied." 2 Labatt, Master and Servant, 1778, 1779, § 614. And see 10 Current Law, 716; 12 Current Law, 696.

Third. In view of the extreme danger of the work at a great height and with a narrow footing, of the complexity of the operations involved, the presence and necessary co-operation of many individuals so situated that independent action on their respective parts would render the place of work perilous, of the restricted opportunities of the servants to observe the imperfect condition of the completed instrumentality and of related circumstances, the master may be required to formulate rules governing the conduct of its employees or to supervise the erection of or to inspect the instrumentality, and may be held responsible for a failure to perform such duty.

The majority opinion places this case in either the first or third of these classes. Upon the particular record here presented to this court, it seems to me that this case does not come within either. It does not come within the first, because a breach by a servant of the general duty of the master to exercise due care in the matter of furnishing to his servant a reasonably safe place for his work is neither necessarily nor universally the negligence of a vice principal. It does not come within the third class, because, although the complaint

does charge the master's failure to supervise, the case was not actually tried nor actually submitted upon this issue. Whatever the result might have been upon different evidence and upon a substantially different charge, the record actually presented to us shows, in my opinion, that the familiar principle of the second class of cases controls.

There are many cases in which this principle has been applied to derricks under circumstances more or less similar to those in the case at bar. While these authorities vary greatly in their significance for present purposes, their result in the aggregate is strongly for defendant's contention. See Holden v. Fitchburg, 129 Mass. 268, 37 Am. Rep. 343; McKinnon v. Norcross, 148 Mass. 533, 20 N. E. 183, 3 L. R. A. 320; McGinty v. Athol, 155 Mass. 183, 29 N. E. 510; Jenkinson v. Carlin, 10 Misc. 22, 30 N. Y. Supp. 530; Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952, 22 Am. St. 854; Marvin v. Muller, 25 Hun, 163; Kennedy v. Jackson, 12 Misc. 336, 33 N. Y. Supp. 630; Kelly v. Jutte & Foley Co., 104 Fed. 955, 44 C. C. A. 274. And see Phœnix Bridge Co. v. Castleberry, 131 Fed. 175, 65 C. C. A. 481; Weeks v. Scharer, 111 Fed. 330, 49 C. C. A. 372; Kinnear Mnfg. Co. v. Carlisle, 152 Fed. 933, 82 C. C. A. 81; Peters v. George, 154 Fed. 634, 83 C. C. A. 408.

The decisions of this court also lead to the same conclusion on the issues as actually presented by this record. Eicheler v. Hanggi, 40 Minn. 263, 265, 41 N. W. 975; Jennings v. Iron Bay Co., 47 Minn. 111, 113, 49 N. W. 685. And see Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020, 4 L. R. A. 793; Fraser v. Red River Lumber Co., 42 Minn. 520, 44 N. W. 878; Fraser v. Red River Lumber Co., 45 Minn. 235, 47 N. W. 785; Hefferen v. Northern Pacific R. Co., 45 Minn. 471, 48 N. W. 1, 526; Ling v. St. Paul, N. & M. Ry. Co., 50 Minn. 160, 52 N. W. 378; Corneilson v. Eastern Ry. Co. of Minn., 50 Minn. 23, 52 N. W. 224; Oelschlegel v. Chicago Great Western Ry. Co., 73 Minn. 327, 76 N. W. 56, 409; Bell v. Lang, 83 Minn. 228, 86 N. W. 95.

It is true that the decision in Woods v. Lindvall, was repudiated in the federal courts. 4 U. S. App. 49, 48 Fed. 62, 1 C. C. A. 37. And it is sometimes insisted that it has not been followed in the sub-

111 M.—32.

sequent decisions in this state. On careful examination of the various cases, however, it will be found that its principle has been logically restricted to appropriate facts, and that so far as it is involved under the present circumstances the substance of the rule remains. It would unreasonably prolong this opinion to set forth the detailed examination of all the cases in this regard, except as will hereinafter appear. As to Lindvall v. Woods, see its review in Blomquist v. Chicago, M. & St. P. Ry. Co., 60 Minn. 426, 62 N. W. 818, and in note to 4 L. R. A. (N. S.) 228.

The specific authorities to which plaintiff refers do not lead to a change of the conclusion. The rule itself was applied in Attix v. Minnesota Sandstone Co., 85 Minn. 142, 88 N. W. 436 (in which the boom of the derrick was defective; the master had not supplied the proper materials); in Swanson v. Oakes, 93 Minn. 404, 101 N. W. 949 (in which the "chock" corresponding to the clamp in the instant case had not been in fact provided); and in Costello v. Frankman, 97 Minn. 522, 524, 525, 107 N. W. 739 (the "high bridge" case, in which the court said of the negligence of the master that "it amounts to a failure to provide proper appliances for the work to be carried on").

In the case at bar the master was not negligent under the rule. He supplied proper material and proper appliances. In Blomquist v. Chicago, M. & St. P. Ry. Co., 60 Minn. 426, 62 N. W. 818, the master was held liable on the ground that he had withdrawn all discretion from the men composing the derrick crew as to when and how the derrick should be erected, and had invested the foreman with full power to devise plans for the strict and complete control of the whole matter. For his negligence the master was held responsible. Note to 4 L. R. A. (N. S.) 229. In the case at bar the place, plan, and manner of putting up the appliances had not been so delegated to any person selected by the master.

In Borgerson v. Cook Stone Co., 91 Minn. 91, 95, 97 N. W. 734, men were placed and required to work upon different levels. To avoid obvious and necessary perils required the supervision of some competent person. The person selected by the defendant was the

foreman of the deceased. For his negligence it was held that the defendant was responsible. The court said, at page 96 of 91 Minn., page 736 of 97 N. W.: "The mutual relations of other servants than the foreman involved risks and hazards that, in connection with the work to be done, required general supervision by one person, and this person was the foreman who had been selected by defendant. His authority was general, and involved risks which were not assumed by plaintiff, and for his negligence the defendant was responsible to the same extent as if defendant were present and directing the work himself." In the case at bar defendant undertook to show, but—it must be here assumed—did not succeed in showing, that plaintiff was the foreman of the gang in question. The absence of supervision, though alleged in the pleading, was not, according to the charge, an issue. The Borgerson case is not controlling in any view. As previously pointed out in this case, the issue as to supervision, although raised by the complaint, was not involved in the charge of the trial court.

In Perras v. A. Booth & Co., 82 Minn. 191, 84 N. W. 739, 85 N. W. 179, the gist of the negligence was the act of the foreman in removing one of the instrumentalities used in the performance of the work without notice or warning to the servant. Thereby the place of performance was rendered dangerous and unsafe. In consequence the servant was killed. The question whether the foreman was a fellow servant or vice principal was for the jury. The facts in the case at bar bear no significant analogy. Here, indeed, the absence of supervision is pleaded as negligence, was not the subject of charge, and was not properly regarded one of the issues in the case.

The strongest case for plaintiff urged upon our attention is Carlson v. Haglin, 95 Minn. 347, 104 N. W. 297. The plaintiff was at work on a platform some seventy feet above the ground. In making a necessary change in the same, one of the supports, called "ledger boards," broke from defects thereon, precipitated a number of employees to the ground, who were instantly killed, and injured plaintiff. While in that case the servants were "ordinary workmen, with

no special knowledge of the duties of constructing the platform or any exigencies arising in the progress of the work" (Lovely, J., at page 350 of 95 Minn., page 298 of 104 N. W.), in this case plaintiff was an experienced and expert workman. There the master left it to the employees to select the material; here the master provided proper material and adequate appliances. There the duty of the master to inspect was a material consideration; here it was not litigated. That case does not distinctly repudiate the general rule which had been formerly adopted by this court and as has been here stated. It must be regarded as depending largely upon the particular facts there presented. Some of the same considerations dispose of Hagerty v. Evans, 87 Minn. 435, 92 N. W. 399, in which the scaffold was not a temporary appliance.

On the other hand, Gittens v. William Porten Co., 90 Minn. 512, 97 N. W. 378, is not especially significant for defendant. While the instrumentality which did the damage was a derrick, the circumstances were substantially different. The damages complained of were caused by a hoist "simple in design and easily made." No part of the material was furnished for its construction. No particular class of workmen was selected by the master to select the timber or construct the hoist.

It follows that under the authorities generally, and of this court in particular, the failure to use the clamp was not a mere detail of the work, and that plaintiff is not within the fellow servant rule.

Defendant has raised other objections which fail to justify reversal. It is but just to add that defendant did not strenuously urge the assignments of error addressed to contributory negligence and assumption of risk.

Affirmed.