# GUSTAV JACOBSEN v. CITY OF MINNEAPOLIS.[1]

August 11, 1911.

Nos. 17,206—(244).

**Negligence of fellow servant.**

Defendant was constructing a sewer under the supervision of a foreman, who employed and discharged the men engaged in the work. Plaintiff and others of the men worked at laying the forms for and tamping concrete in the bottom of the trench. Other servants worked with a concrete mixer, that stood on rail timbers placed lengthwise on cross timbers laid across the top of the trench. This concrete mixer was from time to time, as the work progressed, moved along the trench; the rail timbers and cross timbers in the rear being taken up and placed ahead of the mixer. This work was usually done by the men who worked about the mixer, frequently assisted by men from other parts of the work. One of these cross timbers that had been placed by one of the men engaged in preparing to move the mixer was not properly blocked, and plaintiff was injured in attempting to use it in lowering himself into the trench. *Held*, that plaintiff and the employee who placed and failed to block the cross timber were fellow servants.

**Charge to jury.**

There were no errors in the instruction of the trial court to the jury.

[1]Reported in 132 N. W. 341.

[Note]   Common employment, apart from statute, where no question of vice principalship arises, see note in 50 L.R.A. 417.

Action in the district court for Hennepin county to recover $61,-500 for personal injuries. The gist of the complaint is given in the seventh paragraph of the opinion. The answer alleged contributory negligence on the part of plaintiff. The reply alleged that plaintiff's injuries resulted through defendant's negligence, and the negligence of the foreman or superintendent and representative of the city in charge of the work of construction of the sewer, and that the foreman had full power and authority and control over the men employed in the sewer and over the work of constructing the same. The case was tried before Booth, J., and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Olof L. Bruce,* for appellant.

*Daniel Fish,* City Attorney, and *John A. Dahl,* Assistant City Attorney, for respondent.

BUNN, J.

In September, 1909, defendant, the city of Minneapolis, was engaged in constructing a sewer in Thirty-Eighth Street South, in said city. A trench some thirty feet deep and twelve feet wide was being dug. In this trench, as the work of deepening it progressed, a framework was constructed, consisting of sheathing made of 2 x 8 planks driven down as the trench deepened, placed side by side in an upright position along the sides of the trench. This sheathing was held in place by stringers and braces. The stringers were planks laid horizontally along the inside of the sheathing. They were placed in horizontal rows, one below the other, about two and one-half feet apart. Each stringer was supported by a row of braces six feet apart. These braces were 8 x 10 timbers, and were placed across the inside of the trench, one above the other, in perpendicular rows from the bottom to the top, two and one-half feet apart.

Among the instrumentalities used in doing the work was a concrete mixer and a steam pump. The steam pump and mixer were placed directly over the trench and ran on rails. Rail timbers were placed lengthwise over the trench. There were three sets of these

rail timbers for the mixer, each twenty-four feet in length. They rested on cross timbers eighteen feet in length laid across the top of the trench at six-foot intervals, directly over each row of braces. The ends of these cross timbers rested on planks laid on the ground immediately outside of the trench, and were blocked in order to give the rail timbers a firm bearing.

As the work progressed it became necessary to move the machines, and hence to move the rail and cross timbers. In doing this, the rail and cross timbers behind the machine were taken up and laid again in front. The timbers were thus moved two or three times each week as the work progressed. The foreman would give a general order to move the mixer or the pump, and the work was done by the men without further order or supervision. The cross timbers were intended to support the rail timbers and the machines, and were not intended to serve any other purpose, though they were frequently used by the men to support them in climbing out of or into the trench.

The entire work incident to constructing the sewer was under the supervision of the general foreman, Flingstrom. He gave more particular attention to the machines, but was in charge of the whole work, and directed and supervised it. An assistant foreman was in charge of the men engaged in excavating, and another in charge of the men engaged in laying concrete. It does not appear that there were separate crews of men whose duty it was to do any particular class of work exclusively. Part of the men were in the bottom of the trench shoveling, others were putting in the sheathing, others putting in the concrete, and still others worked in front with the excavating machine deepening the trench. Some of the men worked at the steam pump and mixer. The work of moving the machines, and laying the rail and cross timbers for them to run on, was usually done by the men who worked around the machines; but the foremen would often call upon men engaged in any part of the work to help. All of the men were subject to be called from one part of the work to another at any time, and were so called frequently. They were all common laborers, and were hired by Flingstrom, and assigned by him to the different branches of the work.

Plaintiff, a common laborer, was hired by Flingstrom, June 28, 1909, and put to work on the job. His first work was helping move and lay the rail timbers and crosspieces for the mixer. He did this again on the next day. After this he was put to work at the bottom of the trench, helping put up forms for the concrete and tamping concrete. He continued at this work until September 7, except that he was called upon to help move the pump on one occasion. The concrete was laid in forms in eighty-foot sections. On the last working day before September 7 a section had been completed, and on the morning of the seventh the first business was to remove the forms, and to prepare to put them down ahead of the completed work. Plaintiff, with other men, was engaged in the work during the forenoon. At the same time the men on top were engaged in moving and placing the cross timbers to support the rail timbers for the mixer to move ahead on. The steam pump stood about eighty feet ahead of the mixer, and was moved ahead as the work progressed in the same manner as the mixer was, on rail timbers resting on cross timbers in the same way.

It was necessary to move the pump ahead, and to move the mixer to where the pump had stood before. In the afternoon plaintiff, with the other men he had been working with in the morning, was ordered to move the pump. They moved forward the rail timbers, and placed these and the cross timbers ahead of the pump. At the same time other men moved and placed the cross timbers for the mixer. After the work incident to moving the pump was finished, the foreman ordered plaintiff and the other men, who had been brought up to aid in the work, to return to their work at the bottom of the trench. They all did so except plaintiff, who went to get some nails. Having secured these, he returned the key to the foreman, who was standing at the trench. Plaintiff claims that the foreman ordered him to go down into the trench at the point where they were standing, while the foreman claims that he gave no such order. Plaintiff stepped on the first brace, which was about two and one-half feet below the top of the trench, and with his hands took hold of the cross timber above, intending to lower himself to the next brace below. The cross timber turned and tipped toward him, and

plaintiff fell to the bottom of the trench, receiving frightful and permanent injuries.

Plaintiff brought this action to recover for such injuries. The charges of negligence were the failure of defendant to furnish him a reasonably safe place in which to work, requiring him to go into the trench without warning him of the unsafe condition of the cross timber caused by the failure to properly block it, and failing to properly inspect the work. The trial court submitted the case to the jury, instructing them that the fact that the cross timber that plaintiff took hold of was loose and insecurely placed would not of itself render the city liable, because the cross timber was laid by fellow servants of plaintiff, but that if they found that ordinary care on the part of the city required the inspection of the cross timbers as they were placed, and that Flingstrom was negligent in the matter of such inspection, plaintiff was entitled to a verdict on the question of defendant's negligence.

1. The question on this appeal is whether this instruction was correct. It was established that the cross timber was not blocked, and there was evidence tending to show that it was placed in position by one of the men who were engaged in moving and placing the cross timbers for the concrete mixer. Were these men, in doing this work, fellow servants of plaintiff? If they were, the instruction was correct, and was as favorable to plaintiff as he could ask. If they were not fellow servants, the instruction was erroneous, and there should be a new trial. In other words, was the placing and blocking of these cross timbers, used to support the rail timbers for the mixer to run on, work that was incident to the general work that was being carried on, and naturally done by the workmen as a part of their employment, or can the cross timbers, as placed, be regarded as a structure furnished by the master to his servants, thus making applicable the rule that the master must use reasonable care to see that the structure is reasonably safe?

Is the case within Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020, 4 L.R.A. 793; Fraser v. Red River Lumber Co. 45 Minn. 235, 47 N. W. 785; Marsh v. Herman, 47 Minn. 537, 50 N. W. 611, or Gittens v. Wm. Porten Co. 90 Minn. 512, 97 N. W. 378;

115 M.—26.

or is it within the doctrine of Sims v. American Steel Barge Co. 56 Minn. 68, 57 N. W. 322, 45 Am. St. 451; Blomquist v. Chicago, M. & St. P. Ry. Co. 60 Minn. 426, 62 N. W. 818, or Hagerty v. Evans, 87 Minn. 435, 92 N. W. 399?

It seems very clear that all of the men were engaged in the common employment of constructing the sewer; that the placing and blocking of the timbers that were to support the machines, necessarily done frequently as the work progressed, was a part of the work the men were employed to perform. The necessary timbers were furnished by the master, complete and ready to be placed. The fault was not with these timbers, but with the manner in which a fellow servant of plaintiff placed them. Conceding that plaintiff had no part in placing the timbers, the failure to block which caused the accident, and also conceding that it was intended that the men should use these timbers to lower themselves into the trench, the case cannot be distinguished, either on principle or in its facts, from Lindvall v. Woods and the other cases in the same line.

The men who moved the mixer and made the necessary preparation were not a separate crew, whose exclusive work and duty it was to put up such staging or scaffolding as from time to time was needed for the use of the men engaged in the general work of constructing the sewer. Placing the cross timbers was only a small part of the work of the crew engaged about the mixer, and the evidence is clear that men from other parts of the work were often called upon to assist. Indeed, plaintiff had helped place the timbers, and on the very day of the accident assisted in moving and placing the timbers for the steam pump. The instruction of the trial court was correct.

2. Plaintiff contends that the work was of such magnitude and of such a dangerous character that as a matter of law the master was bound to furnish reasonable and proper inspection. In other words, it is claimed that the court should have so instructed the jury, instead of leaving them to decide whether inspection was required. We think it was a question for the jury, submitted under proper instructions, and that the evidence sustains the verdict.

3. Defendant complains of the instructions in submitting the

question of Flingstrom's negligence in the matter of inspection. It is true, as plaintiff contends, that, if there was a duty to inspect, it was defendant's duty, and that the absence of negligence on the part of Flingstrom, to whom the duty was delegated, would not necessarily prove absence of negligence on defendant's part, if it was the fact that the work required more inspection than one man could give it. But there was no evidence to justify a finding that defendant ought to have furnished other inspectors, or that the work was of too great magnitude to be properly inspected by one man. The issue was tried on the theory that the question of defendant's negligence depended on the care exercised by Flingstrom, and we see no error in the instruction under the circumstances.

4. Error is assigned on the court's failure to instruct the jury as to defendant's duty to properly warn plaintiff of the dangerous condition of the cross timbers. There was no evidence that defendant knew this danger, and hence there could be no duty to warn. Furthermore, plaintiff did not request an instruction on this point, nor make the failure to so instruct a ground of his motion for a new trial.

5. Some point is made of the court's giving supplemental instructions after the main charge was given. As these instructions stated the law correctly, and were merely a repetition in condensed form of the substance of what the court had said in its charge, there is nothing in the point.

Plaintiff asks a reversal of the order denying a new trial because, as he claims, the verdict is "clearly and palpably against the great weight of the evidence and contrary to law." This was not made a ground of the motion for a new trial; but, if it had been, we could not say that the action of the trial court was an abuse of discretion. It is a case that appeals strongly to the feelings, because of the very serious nature of the injuries. But we can see no ground for saying that plaintiff did not have a fair trial, with all the facts brought out and the law correctly applied. There is no reason or excuse for disturbing the verdict.

Order affirmed.