Hillsborough,
Feb. 6, 1934.

JOHN McINTYRE *v.* MARTIN J. McINTYRE.

*Chretien & Craig (Mr. Chretien orally), for the plaintiff.*

*Wyman, Starr, Booth & Wadleigh (Mr. Wadleigh orally), for the defendant.*

MARBLE, J.   In the case of *Haakensen* v. *Company*, 76 N. H. 443, on which the plaintiff relies, liability is held to depend on whether the employer undertakes to furnish his workmen a complete staging or leaves to them the task of preparing the structure for their own use.   In the one instance the master's duty is a non-delegable one; in the other, his only obligation is to provide proper materials for the erection of the structure and to employ competent men to do the work.

There was evidence in the *Haakensen* case that the defendant intrusted to its carpenters the duty of building all stagings on which the masons worked and that the plaintiff (a brick layer) and the men working with him never went upon a staging until it was completed and ready for use.   The collapse of the staging in that case was due to a defective ledger-board.

While in the present case the defendant, by contract with the Shattuck company, furnished the unplanked scaffolding, there is no evi-

dence from which it could fairly be inferred that he undertook to see that this scaffolding was properly planked. Ordinarily the duty of adjusting planks "laid down loosely" on a scaffold, in the usual way, devolves upon the servants who use the scaffold. *Jennings* v. *Company*, 47 Minn. 111, 113; 4 Labatt, M. & S. (2d *ed.*), *p.* 4624.

The plaintiff understood that he had a right to arrange the planking—that he could "put on extra planks or take them away" and that he "could have got a longer plank and put on" if he had noticed that the one which caused him to fall was too short. He declared that "you don't know whether it [a staging] is safe or not until you examine it." He did not examine the staging in question because other men had been working on it and he "assumed it was all right." He said: "If you notice one [plank] that is off you generally adjust it, . . . and sometimes if there is too big a space, you put others in . . . Sometimes they are too far apart for walking, and you might push them over close and have the tender bring another . . . If the tender is around he will help put on all the planks necessary or required."

The defendant did not testify. The foreman in charge of the plasterers stated that the defendant did not instruct him "how to build the scaffold and the staging" but "left that all up to us"; that although the plasterers seldom helped to build stagings, yet if they noticed anything wrong they "would fix it" and if they wanted to rearrange the planks, they "would call their tender or their boss, and he would see that it was done."

Another witness testified that in the case of a sub-contract for plastering, the sub-contractor, as a general rule, "has the contractor erect a pole staging" and he (the sub-contractor) "puts up the plank himself—that is, one of his men," and "if a plank is too short the plasterer should call the tender and have a longer plank put on."

Where appliances of a temporary character are "constructed or adjusted with a view to some particular piece of work," the master cannot be held negligent merely because he leaves "such construction or adjustment to the servants themselves," and "whenever the instrumentality is one of this character," the servant has the burden of adducing evidence "from which an obligation on the master's part to furnish such instrumentality in a completed state is reasonably inferable." 4 Labatt, M. & S. (2d *ed.*), *pp.* 4628, 4629.

No such evidence is here adduced. On the contrary, the only reasonable conclusion to be drawn from the testimony is that in this instance, as in most instances where the plastering was being done under a sub-contract, the defendant took over for the use of his work-

men the framework of the scaffolds already built by the principal contractor and left to the workmen themselves the task of arranging the planks to suit their own convenience. It is true that the plasterers did not ordinarily perform the manual labor of adjusting the planks, but this was only because tenders were employed to assist them.

As stated in the case of *Rihmann* v. *Company*, 114 Minn. 484, 487, 488, "The character of the structure and the work to be done clearly indicate that the only practical method was to use loose planks for staging, so that they could be shifted by the workmen from point to point as they were needed. It was not the personal duty of the defendant to supervise the adjustment of the planks."

The fact that the defendant made arrangements with the Shattuck company to use the portion of the staging already constructed is unimportant, since there is no finding, express or implied, that the structure erected by the Shattuck company was defective. *Garrow* v. *Miller*, 72 Vt. 284, 287. The case differs in this respect from *Elliott* v. *Douglas*, 80 N. H. 418.

Equally unimportant is the fact that the defendant obtained the planks from the Shattuck company, for the referee has found that the planks so obtained were sufficient and suitable "for the planking of said scaffolds" and that the accident was caused simply by O'Dea's selection of planks that were "too short to span the up-rights." It could not be found that O'Dea in selecting or rearranging these planks acted other than as the plaintiff's fellow-servant, for whose negligence the defendant would not be liable. *Frame* v. *Houston*, 78 N. H. 375, 376, and cases cited.

In *Thompson* v. *Company*, 71 N. H. 174, cited by the plaintiff, "the defendants' duty to prepare the staging was stated as a fact proved by the evidence. There was no controversy as to the sufficiency of the evidence upon which this statement was based." *Robichaud* v. *Mendell*, 75 N. H. 391, 393.

The referee referred to the superior court the plaintiff's motion to amend the declaration by adding an allegation that O'Dea was an incompetent workman and that such fact was well known to the defendant. It does not appear that this motion was renewed in the superior court. Presumably the plaintiff has waived it.

*Judgment for the defendant.*

Woodbury, J., did not sit: the others concurred.