Hillsborough, }
Nov. 7, 1934. }

### CHARLES LUCAS *v.* JOSEPH PIETKEVICH.

*Bolic A. Degasis* and *Doyle & Doyle* (*Mr. Robert J. Doyle* orally), for the plaintiff.

*Ivory C. Eaton* (by brief and orally), for the defendant.

MARBLE, J.   There was evidence from which it could be found that the staging in question was defective and that the defect therein caused the plaintiff's injury.   The defendant does not deny this fact but claims that the staging was erected under the supervision of the plaintiff himself and that the case therefore comes within the rule of *Frame* v. *Houston*, 78 N. H. 375, and *McIntyre* v. *McIntyre*, 86 N. H. 479.

The staging was about seventy feet long and extended all around the barn.   At the time of the accident the plaintiff was nailing up one of the cornice boards and was standing at the right-hand corner of the staging.   The defendant, who was near the center of the stag-

ing, walked forward to replenish the supply of nails when the weight of the two men caused the corner pole or post (a "two by four") to give way.

A builder, called by the plaintiff as an expert, testifying with reference to a model of the staging introduced as an exhibit, expressed the opinion that this post was insecurely braced. The plaintiff, who examined the staging after it fell, testified to the same effect. "I found and saw that it [the staging] wasn't nailed right; . . . the nails were awfully small, . . . and it wasn't nailed on to the two by fours; the nails were nailed into the boards. . . . There was only two braces where we put the step ladder up . . . That one [the right brace] has no strength at all."

The defendant stated that the entire staging was built under the plaintiff's direction and that he (the defendant) and a workman merely assisted the plaintiff. The workman corroborated this statement. On the other hand, the plaintiff denied that he had had anything whatever to do with the defective construction. He testified: "I put up the two by fours, and he [the defendant] said it was too expensive for me to put that [the staging] up, that he would get cheaper help to nail down the boards and the staging. . . . I don't know who made the staging. He had a lot of help there; he was working himself, and I don't know who made the staging, like that; . . . he get me to go on the other side, and go to work, because it was nothing to my business, and he was putting up a cheap job. . . . I was the carpenter to put up the frame; and he said he would nail them down and make the staging and everything."

This evidence fully warranted a finding that the defendant "undertook to furnish the staging as a completed structure for the plaintiff to work upon." *Haakensen* v. *Company*, 76 N. H. 443, 444.

Even though the plaintiff understood that it was "a cheap job" done by unskilled laborers, it cannot be said as a matter of law that he was bound to inspect the structure in order to discover whether the work had been properly performed. *Thompson* v. *Company*, 71 N. H. 174. What due care required of him under the circumstances was purely a question of fact. *Derosier* v. *Company*, 81 N. H. 451, 469.

It is true that the plaintiff's expert testified on cross-examination that the defect was such that he "should think" any experienced carpenter ought to have noticed it. Nevertheless, it does not conclusively appear "that the plaintiff was negligent in not discovering the peril which threatened him." *Turner* v. *Company*, 81 N. H. 443,

445. According to his testimony he had been on the staging but once before, and he was then engaged in "putting . . . the last boards" on the roof.

It follows that the trial court did not err either in denying the motions for a nonsuit and directed verdict (*Haakensen* v. *Company*, 76 N. H. 443; *Tierney* v. *Granite Works*, 79 N. H. 166, 167; *Record* v. *Company*, 79 N. H. 495, 496) or in refusing to set the verdict aside (*Bennett* v. *Larose*, 82 N. H. 443).

*Judgment on the verdict.*

All concurred.