Merrimack, } No. 3221.
March 4, 1941. }

EDGAR J. IRELAND *v.* E. J. PINNEY, INC.

324

*John M. Stark, Laurence I. Duncan* and *Robert W. Upton (Mr. Duncan* orally), for the plaintiff.

*Demond, Sulloway, Piper & Jones (Mr. Piper* orally), for the defendant.

ALLEN, C. J. By the common law of the State an employer has the duty of care to see that tools and materials required as facilities in doing the work shall be suitable when furnished. Towards those using the facilities a duty exists to furnish and maintain a sufficient supply of suitable ones. But if suitable ones become unsuitable from their use in the progress of the work, the employer has no duty of inspection, and none of rejection in the absence of actual notice of unsuitableness, subject to the exception of a facility completed for the workman's use. Under the theory of fellow-service and of a workman's own service, selection for use of facilities from those furnished is an incident of the work. Selection involves rejection, and rejection may be because of unsuitability. Hence there may be on hand unsuitable facilities without the employer's responsibility for their use if they were suitable when first supplied, if a sufficient supply

of suitable ones is maintained, if he takes no directing action, if care is used to engage competent workmen, and if a reasonable system and division of the work among the workmen is established. It being a part and incident of the employee's work to select from the facilities furnished, the employer has no duty to select for him; and selection by a fellow-servant is one of fellow-service. This statement of the law accords with well established authority. *Frame* v. *Houston*, 78 N. H. 375, and cases cited; *McIntyre* v. *McIntyre*, 86 N. H. 479; *Martin* v. *Kimball*, 90 N. H. 91.

The defendant here owed the duty to furnish a sufficient and suitable supply of planks for the erection of the plaintiff's staging. The essential issue is whether the evidence tended to show that the duty was not discharged. The erection of the staging was a part of the plaintiff's work. If he had reasonable opportunity to select a plank from an ample supply of suitable ones, the defendant owed him no duty to see that all supplied were kept suitable. The duty of care to furnish only suitable staging material for the construction project existed, but the duty to the plaintiff of suitable maintenance of the supply was thereafter discharged if there was on hand whenever needed for his use a sufficient quantity of fit material for selection by him.

The plaintiff's claim is that the defendant was at fault in furnishing the defective plank. But he produced no evidence to show that the supply of planks at the premises when he was hurt did not contain a sufficient number of suitable quality for all use for which there was occasion at the time. Nor was there evidence that any plank were defective when brought to the premises. A finding to such effect would be conjectural. It did not appear when the defective plank used by the plaintiff was received at the premises, and it was not reasonably to be found that the defect had existed before being thus received. So far as appears, the plank may have been one in the first shipment received at the premises and may then have been in good condition. A finding that either the defect or the coating over it had existed for more than six weeks or that the plank had been at the premises for less time, would be an unsupported assumption. The burden of proof rested on the plaintiff to show a breach of duty on the defendant's part. "If the proper performance of the work . . . required that helpers who could strike left-handed blows should be employed and at hand for service, in the absence of evidence to the contrary it must be presumed that a reasonably sufficient number of such workmen were so employed for use when required." *Hilton*

v. *Railroad*, 73 N. H. 116, 117, 118. So here the breach of duty is not shown, since evidence is lacking that the defect and the coating did not arise and develop during the course of the work on the construction project in which the plaintiff was engaged.

Upon the subsidiary issue of the plaintiff's opportunity to select a plank suitable for his use, his testimony appears decisive. This is its material part: "Q. So that the practice was for you to go to the pile of three or four, . . . and pick out a . . . plank? . . . A. Yes. Q. And you had an opportunity when you started to build this scaffold to take any one of three or four planks that were there? A. Yes, Sir. Q. And the plank that you selected for this job was one of these three or four planks? A. Yes. . . . Q. You realized as part of your experience as a carpenter that it was important for you to select a plank that was all right to work on? A. Sure, we didn't take a chance. Q. So when you went to this pile of planks you had to examine the plank to see if it was all right? A. I looked at it. It looked all right to me, yes. Q. You could pick any one of those planks? A. You could pick them? There wasn't much picking. They were all covered with cement. Q. You had your choice, picking whatever plank you wanted. A. Yes. Q. If you wanted more plank to pick from at any time, all you had to do was to ask the foreman to and have some more brought in? A. Right. . . . Q. If you saw a board and you couldn't tell whether it was safe or not you would not select it, would you? A. No. . . . Q. If you couldn't tell whether the board was safe, if you were doubtful about it, you would discard it? A. Yes, we would discard it if we were doubtful about it."

It thus appears that the plaintiff understood that it was part of his work to determine whether a plank was fit for use and that he had the right to reject any found by him unfit or doubtfully fit. He had had long experience as a carpenter in the course of which he had built many scaffolds. Inability to examine effectively was reason for rejection as much as the discovery of a defect. The plaintiff knew that the cement coating on the plank covered a possible defect, and there was no assurance against it. He had no reason to believe that the defendant had inspected any of the planks after they were brought to the premises. The cement coating on those brought for his selection on the day of his accident was no indication of prior examination. If it indicated anything, it was to the contrary. Hence, no representation of fitness for use may be charged to the defendant. Aware of the concealing feature of the coating, the plaintiff was not misled, and he was entitled to resolve doubts in the same manner as

ascertained defects, by rejection. It was for him to say whether he chose to use any planks he was uncertain about. Whether or not there was a reasonable and available method known to him for his removal of the coating, is not important. The doubt of fitness, without removal, warranted refusal to use. Any selection between use and non-use which may be found reasonable was incident to his service.

Conceding that the coating on the plank concealed a defect discoverable without it, the plaintiff knew all that the defendant knew about it, and its failure to remove the coating or to withdraw the plank from the supply did not imply that the plank might be considered suitable if in its superficial appearance no defect was observable. Furnishing a plank which had become coated in the course of the work and which the plaintiff had opportunity and was free to reject imposed no prior duty of examination upon the defendant. Doubtful suitability as well as observed unsuitability was a test for the plaintiff to employ.

The facts bring the case within the principle of *Frame* v. *Houston*, 78 N. H. 375, and later accordant cases. The motions for a nonsuit and a directed verdict should have been granted. It becomes unnecessary to pass upon exceptions not relating to them.

*Judgment for the defendant.*

All concurred.